[Civ. No. 23528.   Second Dist., Div. Two.   Apr. 27, 1960.]

ALVIN J. McCOWN, Appellant, v. MARIT MENDENHALL, as Administratrix, etc., Respondent.

William H. Brawner and Ernest W. Pitney for Appellant.

Welburn Mayock for Respondent.

RICHARDS, J. pro tem.*—In this action for money had and received, defendant had judgment and plaintiff appeals.

At the pretrial it was stipulated that on October 15, 1956, plaintiff caused to be issued his check for $16,000 payable to the order of the defendant, who signed a written receipt therefor, and that said sum has not been paid to the plaintiff by defendant or by anyone on his behalf.

In the trial the plaintiff contended and offered evidence to prove that the delivery of his check to the defendant was a personal loan to the defendant or, if not a loan, it was money paid to the defendant upon a solicitation for the sale of unauthorized securities in violation of the Corporate Securities Act.

Upon conflicting evidence the court found that the delivery of the check to the defendant was not a personal loan to the defendant but that the plaintiff delivered the check to the defendant for the purpose of his delivering it to the Boulder Club, a gambling casino in Las Vegas, Nevada; that pursuant to said purpose defendant took the check to Nevada, endorsed it and delivered it to the operator of the Boulder Club who cashed the check and added the proceeds

*Assigned by Chairman of Judicial Council.

to the cash assets of the club and caused a certificate of stock to be issued therefor. The trial court further found that the defendant did not solicit the plaintiff to purchase the stock nor to invest in the Boulder Club but that the plaintiff sent the check by the defendant to the Boulder Club as plaintiff's investment therein and that in making delivery of said check to the Boulder Club, the defendant was acting at the plaintiff's request and as his agent.

Plaintiff, as appellant, contends: (1) The evidence does not support the findings; and (2) the findings do not support the conclusions and judgment.

Neither contention is tenable.

■ We are governed in this review by the frequently stated principle that where the evidence is in conflict the court will not disturb the findings. ■ The presumption being in favor of the judgment, the reviewing court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment. ■ When findings are attacked as being unsupported, the power of the reviewing court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings.

Viewed favorably to the defendant, there is manifestly substantial evidence to sustain the findings as the following résumé will indicate.

■ Before October 9, 1956, the plaintiff discussed the possibility of an investment in the corporation which owned and operated the Boulder Club with his personal friend, Dr. Moriarty. Dr. Moriarty was a stockholder in the corporation but was not an employee, director nor officer thereof. At that time the defendant also was a stockholder in the corporation but at no time was he an employee, officer or director thereof. The plaintiff was desirous of securing more information about the club operation, so at Dr. Moriarty's request, the defendant and Dr. Moriarty went to the plaintiff's home where there was a general discussion about the workings of the Boulder Club and the cost of its shares. At this meeting neither Dr. Moriarty nor the defendant solicited any investment in the corporation by the plaintiff.

The next day, in a telephone conversation, the plaintiff asked the defendant when he was going to Las Vegas and

upon being told by the defendant it would be the next day, the plaintiff asked the defendant to stop at plaintiff's office and "he (plaintiff) would give me a check to take to the Boulder Club." The amount was not mentioned. The defendant went to the plaintiff's office the next day and plaintiff was not there but his auditor asked the defendant, "Do you mind if I make out this check in your name? Mr. McCown doesn't want his banker to know he is making any investments in the casinos in Las Vegas." The check was made out and handed to the defendant who took the check to Las Vegas and, after endorsing it, gave it to the manager of the Boulder Club. The check was deposited by the Boulder Club and the proceeds made a part of its general cash funds used for the gambling purposes of the club. A certificate of stock was issued and the plaintiff was notified that the stock certificate was so issued and ready for him in Nevada.

A few days later, the plaintiff telephoned the defendant and inquired what had been done with the check. When the defendant replied that it had been put in the "bank roll" the plaintiff stated he was not sure "whether he wanted to stay in the Boulder Club as an investor or not." In a subsequent meeting set up by the plaintiff with some of his friends, to which he invited Dr. Moriarty, the defendant and the Boulder Club manager, the plaintiff stated to those present that "he was a stockholder in the Boulder Club and was considering coming in for a larger amount."

When called as a witness by the defendant's attorney, the plaintiff testified that he had discussed investing in the Boulder Club with Dr. Moriarty several times before the check in question was handed to the defendant. He further testified that he had never met the defendant until the night the check was issued at which time the defendant told the plaintiff "he was pressed for cash" and that on the following day he lent the defendant $16,000 without security. On redirect examination, plaintiff testified that at both the evening meeting and on the day the check was delivered to the defendant, the defendant had stated that "they needed cash" and that it would be appreciated if he [plaintiff] "would let them have any amount immediately." Plaintiff further testified that thereafter he told defendant he would arrange to have a check drawn which the defendant could pick up but that he "didn't want any ownership in the Boulder Club . . . until such time as [he] had an opportunity to fully investigate it and if he would hold that money and he

may use it based on the friendship [he] had with Dr. Moriarty.'' The confusing and self-contradictory nature of plaintiff's testimony undoubtedly aided the court in accepting the testimony of the defendant and his witnesses as to the true nature of the transaction that there was no personal loan to the defendant nor any solicitation of the plaintiff by the defendant to purchase stock in the Boulder Club.

Plaintiff's argument as to the liability of one who solicits the sale of unauthorized securities is answered by the trial court's finding sustained by credible evidence, as we have pointed out, that there was in fact no solicitation of the sale of securities by the defendant.

Having found that the plaintiff did not make a personal loan to the defendant; that the defendant did not solicit plaintiff to buy Boulder Club stock or to invest therein and that the defendant was not acting as agent for the Boulder Club, the court's conclusion that the plaintiff take nothing naturally followed as it was the only conclusion that the findings would support.

Without merit, the plaintiff's appeal is, as apparently was his investment in the Boulder Club, just a losing gamble.

Judgment affirmed.

Fox, P. J., and Ashburn, J., concurred.